UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ZACHARY TERRELL | * | NUMBER 2:18-CV-5787 |
| Plaintiff | * | |
| | * | SECTION D(5) |
| VERSUS | * | |
| | * | JUDGE WENDY B. VITTER |
| TROOPER TROY PICHON, TROOPER | * | |
| JEFFREY ROACH, LIEUTENANT | * | MAGISTRATE JUDGE MICHAEL NORTH |
| DERRELL WILLIAMS, AND CAPTAIN | * | |
| DARRIN NAQUIN, | * | |
| each in their individual capacities | * | |
| Defendants | * | |

************************************

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

Defendants Troy Pichon, Jeffrey Roach, Derrell Williams, and Darrin Naquin, each in their individual capacities, respectfully submit this memorandum in support of their motion for summary judgment seeking dismissal of all claims alleged by the Plaintiff, Zachary Terrell.

Terrell is barred from asserting his claims under *Heck v. Humphrey*[1] because the factual allegations presented in his lawsuit squarely challenge the factual determinations underlying his convictions in a Louisiana state criminal court for possession of heroin, possession with intent to distribute Tramadol, and resisting an officer. Through this lawsuit, Terrell and his attorneys seek to argue to a jury that he did nothing wrong, that there was no basis for the police to stop him, that there was no basis for the police to use any force to overcome any resistance to detain or arrest him, and therefore that his criminal convictions lack a valid basis. This is not permissible under *Heck*. If Terrell's Section 1983 excessive force claims are

---

[1] 512 U.S. 477 (1994).

{00782904 - v1}

dismissed, all ancillary claims alleging failure to intervene to prevent the use of excessive force, all claims alleging failure to train or supervise to prevent the use of excessive force, and all Louisiana tort claims must likewise be dismissed.

Alternatively, if Terrell is not barred from pursuing all claims for use of excessive force, his claim must still be partially dismissed to the extent that Terrell alleges that the deployment of a Taser by Trooper Troy Pichon was itself excessive force. Trooper Pichon is entitled to qualified immunity for his use of a Taser because the use of a Taser against a subject resisting a valid arrest (as Terrell admitted to doing as part of his criminal guilty plea) did not violate clearly established law. Terrell's "bystander liability" claim against Trooper Roach must be dismissed because Trooper Roach had no opportunity to intervene to prevent any use of force. Terrell's claims that Darrin Naquin and Derrell Williams failed to properly supervise or train Pichon and Roach must be dismissed because Terrell cannot prove the necessary element of deliberate indifference. Finally, Terrell's claims under tort law fail due to Plaintiff's inability to prove any use of excessive force.

Defendants respectfully request that Terrell's lawsuit be dismissed, in its entirety, with prejudice.

## FACTS RELEVANT TO THIS MOTION

Zachary Terrell was arrested by the Louisiana State Police ("LSP") in the New Orleans French Quarter on June 17, 2017. Defendants Troy Pichon and Jeffrey Roach were LSP Troopers working on June 17, 2017, as part of LSP's "Troop N" detail operation in the French Quarter.[2] Defendant Darrin Naquin was at the time of the arrest an LSP Captain serving as the

---

[2] R.Doc. 7, ¶¶ 11, 13.

Commander of Troop N.[3]  Defendant Derrell Williams was at the time of the arrest serving as the Director of LSP's Training Academy.[4]

## The Arrest

Trooper Pichon testified that he and Trooper Roach first observed Terrell and an unknown white male while driving down St. Peter Street in Roach's marked LSP vehicle.[5] Pichon observed the two men standing face to face on the sidewalk, straddling bicycles.[6] Pichon saw the unknown man reach out his hand to give money to Terrell.[7]  Terrell took the money, but upon seeing the marked police vehicle both Terrell and the unknown man immediately grabbed their cell phones and immediately began to speak.[8]  Pichon asked Roach to "make the block" and return to see if the two men were still there.[9]  After Roach drove around the block, Pichon saw Terrell begin pedaling away on his bicycle.[10]  Roach and Pichon exited the vehicle, with Roach approaching the white male and Pichon attempting to stop Terrell on the bicycle.[11]  Terrell ignored Pichon's commands to stop bicycle.[12]  Pichon then ran back to the LSP vehicle and told Roach to get in.[13]  They drove down the street, where Pichon again told Terrell to stop the bicycle.[14]  When they approached the corner of St. Peter and

---

[3] R.Doc. 7, ¶ 8.
[4] R.Doc. 7, ¶ 5.
[5] Exhibit A, Deposition of Troy Pichon, p. 179.
[6] Exhibit A, p. 181.
[7] Exhibit A, p. 181.
[8] Exhibit A, p. 182.
[9] Exhibit A, p. 184.
[10] Exhibit A, p. 188.
[11] Exhibit A, p. 189.
[12] Exhibit A, p. 190.
[13] Exhibit A, p. 193.
[14] Exhibit A, p. 194.

Burgundy Streets, Terrell turned left to ride against traffic.[15]  At that point Pichon jumped out of the car and began chasing Terrell.[16]

According to Pichon, Terrell saw Pichon running after him and attempted to ride faster.[17]  Terrell stood up on the bicycle pedals in order to attempt to go faster but only had one hand on his handlebars.[18]  Pichon saw Terrell grabbing on to his waistband with his other hand.[19]  Based on his experience and considering all circumstances, Pichon believed that Terrell was armed.[20]  After Terrell continued to refuse commands to stop the bicycle, Pichon deployed his Taser.[21]  Terrell's body locked up, and he fell off the bike toward his right side and struck his face on the sidewalk.[22]  Pichon observed Terrell drop something on to the street and directed Roach to find it.[23]  Roach found a blister pack containing Tramadol pills.[24]

Trooper Roach testified that he did not personally observe the hand to hand transaction between Terrell and the second man but recalled that Pichon instructed him to make the block.[25]  After they drove around the block, Roach approached the unknown man believed to have been engaged in the transaction with Terrell, who immediately showed him his hands.[26]  After Pichon indicated that Terrell was leaving, both Roach and Pichon re-entered Roach's vehicle, leaving the second man behind.[27]  As their vehicle approached the intersection of St.

---

[15] Exhibit A, p. 202.
[16] Exhibit A, p. 202.
[17] Exhibit A, p. 205.
[18] Exhibit A, p. 205.
[19] Exhibit A, p. 207.
[20] Exhibit A, p. 207.
[21] Exhibit A, p. 209.
[22] Exhibit A, p. 211.
[23] Exhibit A, p. 215.
[24] Exhibit A, p. 216.
[25] Exhibit B, Deposition of Jeffrey Roach, p. 183.
[26] Exhibit B, p. 194.
[27] Exhibit B, p. 194.

Peter and Burgundy, Pichon exited the vehicle to pursue Terrell on foot.[28]  Roach was still in the vehicle and approximately six vehicle lengths away from Pichon and Terrell when Roach saw the bike begin coasting and fall out of view to the right.[29]  Roach did not see Pichon deploy the Taser from that distance but assumed Pichon did because it was the only way Terrell could have fallen from the bicycle that way he did.[30]  Roach then exited the vehicle and approached Pichon to assist him.[31]  Pichon told him that Terrell had thrown something, and Roach located a silver cellophane package with pills.[32]

Per the case report submitted by Trooper Pichon, a search incident to arrest revealed that Terrell was in possession of 17 individually wrapped bags of heroin and 21 Tramadol pills (including the six Tramadol pills found on the street by Trooper Roach) as well as $113 in currency.[33]  EMS was called to the scene, and Terrell was taken to University Medical Center for treatment of his facial injuries.[34]  He was then booked in the Orleans Parish Prison.[35]  Subsequent testing by the New Orleans Police Department confirmed that the substances seized from Terrell as evidence were Tramadol and heroin.[36]

**Terrell Pleads Guilty To Multiple Crimes, Including Resisting An Officer**

Terrell was arraigned in the Orleans Parish Criminal District Court on July 21, 2019.[37]  Terrell formally pled guilty to one count of possession of heroin in violation of La. R.S.

---

[28] Exhibit B, pp. 201-02.
[29] Exhibit B, p. 205.
[30] Exhibit B, p. 209.
[31] Exhibit B, p. 212.
[32] Exhibit B, p. 212.
[33] Exhibit C, Case Report.
[34] Exhibit C.
[35] Exhibit C.
[36] Exhibit D, Scientific Analysis Report.
[37] Exhibit E, certified records of Criminal District Court, p. 4.

40:966(C)(1), one count of possession with intent to distribute Tramadol in violation of La. R.S. 40:969(B), and one count of resisting an officer in violation of La. R.S. 14:108.[38] Criminal District Court records reflect that the Judge Karen Herman interrogated Terrell in open court, advised him of all applicable rights, and found "a substantial factual basis to entertain a plea of guilty" to all counts.[39]  The Criminal District Court docket notes no attempt by Terrell to challenge probable cause or to suppress any evidence based on lack of probable cause for his arrest prior to the entry of his three guilty pleas.[40]

La. R.S. 14:108(A) provides that "[r]esisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity."  While, as noted below, Terrell now insists that he did not resist a lawful detention or arrest there is no genuine issue of material fact that Terrell pled guilty to this crime.

### Terrell Now Denies Resisting An Officer

In his Amended Complaint, Terrell alleges that on the night of June 17, 2017, he had finished a shift at a French Quarter restaurant and met up with a friend on St. Peter Street to make plans for the evening before borrowing a bicycle.[41]  After plans were made, Terrell alleges that he put earphones in his ears and rode away on the bicycle, holding his phone in his right

---

[38] *Id.*
[39] Exhibit E, p. 6.
[40] Exhibit E.
[41] R.Doc. 7, ¶ 14.

hand.[42]  Terrell denies selling heroin or Tramadol to his "friend."  Terrell denies hearing any

order from the State Troopers commanding him to stop.[43]  Terrell contends that he did not

reach for anything on his person and did not turn back toward or threaten Trooper Pichon

before Pichon deployed a Taser against him.[44]  Terrell alleges that Trooper Roach "observed

that ... *Terrell was not resisting Pichon*" yet failed to take any action to prevent the use of the

Taser or alleged acts of force after he fell from the bicycle.[45]

In his deposition testimony, Terrell continued to deny any factual basis to support his

voluntary guilty pleas.  He denied exchanging anything with his friend while standing on St.

Peter Street except for a cigarette lighter.[46]  He testified that he was playing music on his

headphones turned "all the way up" and that he never heard anyone tell him to stop or anyone

running behind him attempting to stop him such that he ignored any commands.[47]  He did not

see a second trooper (Trooper Roach) until after he had already been handcuffed and sat up on

the sidewalk following alleged punches and kicks by Trooper Pichon.[48]  When asked to explain

how he resisted an officer as a factual basis for his guilty plea in Orleans Parish Criminal District

Court, Terrell stated:

> I don't know what I did to resist.  How can I know I'm resisting if I'm not aware
> that they're behind me, know what I mean?  So I don't know what my action –
> you know, what I did to constitute as resisting if I'm not aware I'm being chased,
> you know what I mean?[49]

---

[42] R.Doc. 7, ¶ 15.
[43] R.Doc. 7, ¶ 24.
[44] R.Doc. 7, ¶ 32.
[45] R.Doc. 7, ¶ 36.  [Emphasis added.]
[46] Exhibit F, Deposition of Zachary Terrell, p. 29.
[47] Exhibit F, pp. 32, 34.
[48] Exhibit F, pp. 41-42.
[49] Exhibit F, p. 59.

**The Lawsuit**

On June 10, 2018, Terrell filed the instant action against Trooper Troy Pichon, Trooper Jeffrey Roach, Lieutenant (now Captain) Derrell Williams, and Captain (now Major) Darrin Naquin alleging federal causes of action pursuant to 42 U.S.C. § 1983 and torts under Louisiana State law.[50] Terrell filed an amended complaint on August 23, 2018.[51]

In Count I of his amended complaint, Terrell alleges that Naquin and Williams failed to properly supervise Pichon and Roach. Terrell alleges that Pichon had, on multiple occasions prior to the June 2017 arrest, "used excessive force" against other individuals, that Naquin and Williams "were specifically aware" of these unconstitutional uses of force, and that Naquin and Williams failed to provide adequate training, supervision, or discipline in response to prevent Pichon's use of excessive force against Terrell.[52] In Count II, Terrell alleges that Pichon used excessive force against Terrell in violation of the Fourth Amendment and that Roach failed to intervene to prevent the use of force.[53] In Count III, Terrell alleges various acts of state tort law by the four defendants.[54]

The Defendants answered and pled numerous affirmative defenses including, but not limited to, qualified immunity.[55]

---

[50] R.Doc. 1.
[51] R.Doc. 7.
[52] R.Doc. 7, ¶ 76-83.
[53] R.Doc. 7, ¶¶ 84-86.
[54] R.Doc. 7, ¶¶ 87-92.
[55] R.Doc. 8, p. 12, Third Affirmative Defense.

**LAW AND ARGUMENT**

**A. All excessive force claims against Trooper Pichon must be dismissed pursuant to *Heck v. Humphrey* because the factual allegations made by Terrell improperly challenge his criminal conviction for resisting an officer.**

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the U.S. Supreme Court held that a plaintiff convicted of a crime cannot, through the filing of a Section 1983 claim, challenge the constitutionality of his conviction unless the conviction has been reversed, expunged, declared invalid, or is called into question by federal habeas corpus. *Id.* at 486-87. *Heck* bars any claims "for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid." *Id.* at 486. The determination of whether such claims are barred is "analytical and fact-intensive, requiring [a court] to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008). "[A] plaintiff's claim is Heck-barred despite its theoretical compatibility with his underlying conviction is if specific allegations in the complaint are necessarily inconsistent with the validity of the conviction." *Id.* at 498 n.14; *see also Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) ("It is irrelevant that [a plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, Heck kicks in and bars his civil suit"). A claim of excessive force that is "temporally and conceptually distinct" from the conviction is not barred by *Heck*. *Bush v. Strain,* 513 F.3d at 498. However, where – as in the instant case – the conviction for resisting arrest and the claim of use of force stem from a single interaction, the claims are not derived from distinct incidents. *Walter v. Horseshoe Entertainment*, 483 Fed.Appx. 884, 887 (5th Cir. 2012).

Terrell will of course argue that genuine issues of material fact exist which preclude summary judgment on his claims, based on his denials of all wrongdoing and his denial of any resistance. But that dispute between Terrell's factual allegations and the factual elements of Terrell's conviction under La. R.S. 14:108 is exactly why *Heck* requires dismissal. There is no genuine issue of material fact that Terrell is challenging the factual bases for his convictions through this lawsuit.

The elements of La. R.S. 14:108, to which Terrell pled guilty, requires a factual finding that Terrell (1) intentionally interfered with, opposed, resisted, or obstructed (2) an individual authorized by law to make a lawful arrest or detention (3) with Terrell's knowledge that Pichon was acting in his official capacity. Terrell's allegations and testimony challenge every factual element of this crime. He denies intentional interference, opposition, resistance, or obstruction to his detention or arrest. His counsel seeks to argue that his arrest and detention were not lawful. Terrell denies ever even seeing a police officer until after Pichon deployed his Taser. Success on the merits of his claims will depend on the jury finding facts which contradict his conviction.

Terrell's claims are similar to claims to other lawsuits in which excessive force claims were dismissed on summary judgment under *Heck* due to a plaintiff's attempts to deny the factual basis for state court convictions. In *Arnold v. Town of Slaughter*, 100 Fed.Appx. 321 (5th Cir. 2004), the Fifth Circuit affirmed dismissal of excessive force claims on summary judgment where a plaintiff pled guilty to resisting an officer in violation of La. R.S. 14:108 and then sought to present a contradictory factual account in federal court. In *Arnold*, police officers made a traffic stop of a third party who had pulled into Arnold's driveway. Arnold then came outside of

his house.  The officers alleged that Arnold had started a confrontation by making threats, being belligerent, and taking a swing at one of them.  *Id.* at 322.  Arnold alleged that he did not confront or threaten any officer but merely picked up his son.  *Id.*  Arnold was later convicted of resisting an officer.  In deposition testimony, Arnold testified that he never attempted to strike any officer, never threatened and officer, and never resisted any attempt by any officer to arrest him.  *Id.* at 324.

After the district court granted summary judgment dismissing Arnold's excessive force claim, the Fifth Circuit affirmed based on its finding that "Arnold's suit squarely challenges the factual determination that underlies his conviction for resisting an officer."  *Id.* at 324-25.  The Fifth Circuit distinguished Arnold's case from other cases distinguishing Heck because

> Arnold's claims are not that the police used excessive force after he stopped resisting arrest or even that the officers used excessive and unreasonable force to stop his resistance.  ***Instead, Arnold claims that he did nothing wrong, but was viciously attacked for no reason.***  He provides no alternative pleading or theory of recovery.

*Id.* at 324.  [Emphasis added.]

In *Walker v. Munsell*, 281 Fed.Appx. 388, 389 (5th Cir. 2008), the Fifth Circuit again affirmed the dismissal of excessive force claims by an arrestee under similar circumstances. Walker alleged that he was pulled over by an officer of the Denham Springs Police Department for failure to use a turn signal, and that during the course of the stop an officer allegedly struck him from behind and maced him in the face without any provocation.  *Id.*  After other officers arrived at the scene, the plaintiff alleged that they beat him.  *Id.*  Walker was subsequently convicted in a Louisiana state court for three counts of resisting an officer and one count of failure to signal.  *Id.*

The Fifth Circuit concluded that dismissal was proper under *Heck* because "[Walker's] claim is based solely on his assertions that he did not resist arrest, did nothing wrong, and was attacked by the Appellee officers for no reason." *Id.* Accordingly, Walker's suit "squarely challenge[d] the factual determination that underlies his conviction for resisting an officer," and if he prevailed on his claim "he will have established that his criminal conviction lacks any basis." *Id.* (citing *Arnold v. Town of Slaughter,* 100 Fed Appx. 321, 324-35 (5th Cir. 2004)).

In *Daigre v. City of Waveland, Miss.*, 549 Fed.Appx. 283 (5th Cir. 2013), police officers entered the plaintiff's apartment after they received a 911 call arising out of a commotion in the apartment and the plaintiff did not respond to attempts to knock on her door. The parties disputed the facts of what occurred after that, but the plaintiff ultimately pled guilty to resisting an arrest in violation of Mississippi Code Sec. 97-9-73, which similar to the Louisiana statute prohibits any person from "obstruct[ing] or resist[ing] by force, or violence, or threats, or in any other manner, his lawful arrest." *Id.* at 286.

The Fifth Circuit noted that Daigre repeatedly contradicted her admission of guilt to resisting arrest by denying any and all physical resistance and by denying that she was never a threat to the safety or herself or others. The court concluded that her excessive force claim was barred by *Heck* because "she still thinks [she is] innocent." *Id.* at 287 (citing *DeLeon v. City of Corpus Christi*, 488 F.3d 649 (5th Cir. 2007). Accordingly, the court affirmed the district court's dismissal based on *Heck.*

Terrell's denial of all resistance is plainly inconsistent with his arrest for resisting an officer. According to a plain reading of Terrell's complaints and deposition testimony, Terrell submits that did nothing wrong on the evening on June 17, 2017, which would lead to a valid

arrest by the Louisiana State Police. He denies selling narcotics to his "friend" such that reasonable suspicion or probable cause ever existed for the arrest which resulted in his multiple convictions. He denies fleeing from the police after they attempted to stop him or resistance to his arrest or detention. Terrell apparently believes and seeks to argue to a jury that he was innocent and that the defendant troopers had no basis for any of their actions. Under these circumstances, his excessive force claims must be dismissed under *Heck*.

**B. Alternatively, Trooper Pichon is entitled to qualified immunity from Terrell's excessive force claim based on the deployment of a Taser.**

If the event that the Court does not dismiss the entirety of Terrell's excessive force claims under *Heck*, Trooper Pichon has pled qualified immunity as an affirmative defense. To overcome a claim of qualified immunity, a plaintiff must show (1) "a violation of an actual constitutional right" and (2) that "the right was clearly established at the time of violation." *See, e.g., Escobar v. Montee*, 895 F.3d 387, 393 (5th Cir. 2018) (citing *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016)). A court may address either prong first. *Id.* (citing *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)). Defendants will focus on the second prong because there is no clearly established law prohibiting the use of a Taser against Terrell under the facts of this case.

**1. Trooper Pichon's deployment of his Taser against Terrell did not violate clearly established law.**

In excessive force cases, "the second prong of the analysis is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Griggs v. Brewer*, 841 F.3d 308, 313 (5th Cir. 2016) (citing *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005)). The conduct

alleged to violate the law must violation "constitutional rights of which a reasonable person would have known." *Samples v. Vadzemnieks*, 900 F.3d 655, 662 (5th Cir. 2018). Clearly established law must be "particularized to the facts of a case." *Id.* While this does not require a prior case "directly on point," "precedent must still put the underlying question beyond debate." *Id.* (citing *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015).

Defendants submit that there was no existing U.S. Supreme Court, Fifth Circuit, or Louisiana Supreme Court precedent as of June 17, 2017, which would have placed a reasonable officer on notice that the deployment of a Taser against a suspect who was believed to have been involved in a hand-to-hand narcotics transaction, who fled the scene of the transaction on a bicycle, who ignored repeated commands to stop, and who actively resisted his arrest (as explicitly admitted in his guilty plea) violated clearly established law.

In *Darden v. City of Fort Worth, Texas*, 880 F.3d 722 (5th Cir. 2018), the Court noted that it "previously suggested that a constitutional violation occurs when an officer tases, strikes or violently slams an arrestee *who is not actively resisting arrest*." Id. at 731 [emphasis added]. The court therefore concluded that "if a jury finds that [an arrestee] was not actively resisting arrest, then a jury could likewise conclude that [an officer used excessive force by throwing [the arrestee] to the ground and tasing him twice." *Id.* Unlike the plaintiff in *Darden*, in light of his criminal conviction for resisting an officer, *Heck* precludes a jury from finding that Terrell was not actively resisting an arrest based upon his state court conviction for resisting an officer.

In *Hanks v. Rogers*, 853 F.3d 738 (5th Cir. 2017), the Fifth Circuit stated that the use of a Taser against an individual would violate a clearly established right of a person who "poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the

officer stopped for a minor traffic violation." *Id.* at 747. Terrell clearly posed a flight risk and ultimately pled guilty to resisting an officer who was attempting to stop him for a suspected felony drug distribution charge.

In *Zimmerman v. Cutler,* 657 Fed.Appx. 340, 347 (5th Cir. 2016) the Fifth Circuit held that at the time of an arrest in February 2012, it was not clearly established "that a single shot or use of a Taser to halt a fleeing misdemeanor suspect would amount to excessive force."[56] Subsequent to *Zimmerman*, the Fifth Circuit in *Pena v. City of Rio Grande City*, 839 F.3d 613, 620 (5th Cir. 2018) distinguished a plaintiff's claims from those in *Zimmerman* based on the plaintiff's claims that she was not fleeing at the time of the use of the Taser. Neither case actually concluded that the use of a Taser to halt a fleeing suspect was in fact an unconstitutional use of force. And Terrell was a fleeing felony suspect.

In *Newman v. Guedry,* 703 F.3d 757, 763 (5th Cir. 2012), the Fifth Circuit concluded that it was objectively unreasonable for an officer to use a Taser multiple times on a suspect who had "committed no crime, posed no threat to anyone's safety, and did not resist the officers or fail to comply with a command." *Id*. at 764. The Court emphasized that "[n]o one contends that Newman attempted to flee." *Id.* at 763. The instant case is again distinguishable as Trooper Pichon used his Taser only once, Terrell judicially acknowledged resisting an officer, and Trooper Pichon perceived that Terrell was attempting to flee.

To the extent that Terrell attempts to distinguish this long line of case law on the narrow basis that he was riding a bicycle at the time Trooper Pichon deployed his Taser, Defendants submit that there is no existing U.S. Supreme Court, Fifth Circuit or Louisiana Supreme Court

---

[56] After granting immunity on the second prong of the test, the Court did not consider the question of whether the use of a Taser on a fleeing misdemeanor suspect was in fact a constitutional violation.

case law which would place an officer on notice that the deployment of a Taser in otherwise permissible circumstances against a suspect who happened to be using a bicycle to flee rather than fleeing on foot violation of clearly established law. In *Steen v. City of Pensacola*, 809 F.Supp.2d 1342 (N.D.Fla. 2011), a district court case in a separate federal circuit, a Northern District of Florida judge concluded that it was not clearly established to every objectively reasonable government official "that discharging a single Taser shock to a suspect attempting to flee on a bicycle was unconstitutional." *Id.* at 1356. No federal appeals court has ever considered the issue of whether the use of a Taser against a subject on a bicycle is per se excessive force.

Terrell's excessive force claims against Trooper Pichon based on the deployment of a Taser must be dismissed because the use of the Taser did not violate clearly established law as of June 17, 2017.

## C. Terrell's "bystander liability" claim against Trooper Roach must be dismissed based on failure to prove a prima facie case.

Terrell does not allege that Trooper Roach personally used force against him. Instead, Terrell alleges that Roach "fail[ed] to intervene to prevent Defendant Pichon from engaging in excessive use of force against Terrell" in violation of Terrell's rights.[57]

Under the law, an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under Section 1983. *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015) (citing *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)). In order to establish this claim, a plaintiff must show that an officer (1) knew that a fellow officer was violating an individual's constitutional rights, (2) had a

---

[57] R.Doc. 7, ¶ 85.

reasonable opportunity to prevent the harm, and (3) chose not to act. *Id.* (citing *Kitchen v. Dallas Cnty., Tex.*, 759 F.3d 468, 480 (5th Cir. 2014).

Trooper Roach is entitled to summary judgment dismissing this claim based on Terrell's failure to establish the second element of the claim. Trooper Roach had no reasonable opportunity to prevent harm to Terrell. There is no evidence that Roach was aware that Pichon intended to deploy his Taser prior to exiting the vehicle. At the time that Pichon deployed the Taser, Roach was still in his vehicle and approximately six vehicle lengths away in distance. Roach did not reach the area where Pichon had stopped Roach until some time after he walked to Pichon and then retrieved the Tramadol dropped by Terrell from the bike. Terrell's testimony indicates that he was not aware that Trooper Roach was present at the scene or in position to prevent any actions until after he had already been handcuffed and sat up on the sidewalk. The bystander liability claim against Roach must be dismissed.

**D. Terrell's supervisory liability claims against Darrin Naquin and Derrell Williams must be dismissed.**

**1. The claims must be dismissed automatically if the underlying claims against Pichon and Roach are dismissed.**

Claims for inadequate supervision and failure to train fail without an underlying constitutional violation. *Whitley v. Hanna*, 726 F.3d 631, 648-49 (5th Cir. 2013). If the Court dismisses the claims of excessive force and bystander liability against Troopers Pichon and Roach, the Court must also dismiss the supervisory claims against Naquin and Williams as a matter of course.

**2. Alternatively, the claims must be dismissed based on Terrell's failure to prove deliberate indifference by Naquin or Williams.**

Terrell alleges that Naquin and Williams are liable under Sec. 1983 because they failed to properly supervise and train Troopers Pichon and Roach.[58] The basis for this claim is Terrell's allegation that Trooper Pichon "used excessive force against subjects who had been stopped or arrested" on prior occasions.[59] He further alleges that Pichon "on multiple occasions … used boilerplate language to justify his uses of force, indicating that the factual basis for the use of force was fabricated."[60] Terrell's complaint specifically lists six instances in which Trooper Pichon submitted a use of force report prior to Terrell's arrest which allegedly should have placed Naquin and Williams on notice that Pichon required additional training or discipline.[61] His claims, in essence, are that Naquin and Williams knew or should have known about a pattern of unconstitutional uses of force by Pichon and that their failure to discipline or re-train him caused his use of force against Terrell.

Naquin and Williams have pled qualified immunity in response to this claim. In order to survive summary judgment on his claims for failure to train or supervise, Terrell must prove (1) the supervisor failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of Terrell's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *Davidson v. City of Stafford, Tex.*, 848

---

[58] R.Doc. 7, ¶ 76-83.
[59] R.Doc. 7, ¶ 79.
[60] R.Doc. 7, ¶ 80.
[61] R.Doc. 7, ¶ 46(a) – (f). The Amended Complaint also lists an event which occurred after Terrell's arrest in paragraph 46(g) which is completely irrelevant to Terrell's claims. The law is clear that "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice … and the opportunity to conform to constitutional dictates" such that it could be used to prove deliberate indifference on the part of Naquin or Williams. *Connick v. Thompson*, 563 U.S. 51, 63 n. 7 (2011).

F.3d 384, 397 (5th Cir. 2017); *Dotson v. Edmonson*, Civil Action No. 16-15371, 2018 WL 501512, at *11 (E.D.La. Jan 22, 2018) (Morgan, J.).

The third prong of the test, deliberate indifference, is a "stringent standard of fault" which requires Terrell to demonstrate that Naquin or Williams "disregarded a known of obvious consequence of his action." *Id.* Actions or decisions that are "merely inept, erroneous, ineffective, or negligent" do not establish deliberate indifference and do not divest officials of qualified immunity. *Id.* "A state actor's failure to alleviate 'a significant risk that he should have perceived but did not,' while 'no cause for commendation,' does not rise to the level of deliberate indifference." *McClendon v. City of Columbia,* 305 F.3d 314, 326 n.8 (5th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

To prove deliberate indifference in the context of alleged failure to train, a plaintiff must usually demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation. *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375 (5th Cir. 2005); *Dotson v. Edmonson*, 2018 WL 501512, at *12. To establish a "pattern" of constitutional violations, Terrell must show "similarity, specificity, and sufficiently numerous prior incidents." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 396 (5th Cir. 2017); *Dotson*, 2018 WL 501512, at *12 (citing multiple Fifth Circuit cases for the proposition that three incidents over three and a half years, twenty-seven instances over four years, and eleven incidents were not "sufficiently numerous") . Moreover, where, as here, none of the incidents alleged to establish the "pattern" were actually adjudicated to be constitutional violations, a court is less likely to find that a pattern exists. *Dotson*, 2018 WL 501512, at *12 (citing *Davidson,* 848 F.3d at 396-n. 6 ("That we would have to consider whether

each prior incident constitutes an unconstitutional arrest further cuts against a finding of a pattern")).

Terrell's alleged "pattern" is predicated on nothing more than his attorneys' subjective interpretations of six use of force reports submitted by Trooper Pichon prior to his arrest. None of the incidents detailed in the use of force reports resulted in a complaint with the Louisiana State Police or a lawsuit, much less any adjudication of an actual constitutional violation. Terrell has identified none of the individuals involved in those events as potential witnesses in this lawsuit. Discovery has revealed no evidence that Terrell or his attorneys have taken any steps whatsoever to investigate the underlying facts of the incidents to prove that any constitutional violations occurred beyond their reading of use of force reports.

Even if the Court wished to examine the merits of each prior incident separately in a series of what would essentially become "mini-trials" in order to determine whether each described use of force was in fact unconstitutional – which the Fifth Circuit cautioned against doing in *Davidson* – Terrell can provide the Court or the jury with no evidence that would allow that to take place. Listing six reports, with nothing more, does not even remotely approach satisfying Terrell's burden to prove deliberate indifference through a sufficiently numerous pattern of constitutional violations. Terrell's claims alleging supervisory liability under Section 1983 based on failure to train or supervise must be dismissed.

### E. Terrell's state law claims must be dismissed.

#### 1. Assault and battery

Terrell alleges that "Pichon, assisted by Roach, assaulted and battered Terrell without cause or justification."[62]

Under Louisiana law, a battery is "harmful or offensive conduct with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." *Caudle v. Betts*, 512 So.2d 389, 391 (La. 1987). Assault is "the imminent threat of a battery." *Bulot v. Intracoastal Tubular Servs., Inc.*, 98-2105, p. 13 (La. App. 4 Cir. 2/4/99); 730 So.2d 1012, 1018, *abrogated on other grounds by Bulot v. Intracoastal Tubular Servs., Inc.*, 2004-1376 (La. App. 4 Cir. 11/3/04); 888 So.2d 107. "Under ordinary circumstances the use of reasonable force to restrain an arrestee shields a police officer from liability for battery." *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1135 (5th Cir. 2014) (citing *Ross v. Sheriff of Lafourche Parish*, 479 So.2d 506, 511 (La. App. 1 Cir. 1985)). "Excessive force transforms ordinarily protected force into an actionable battery." *Id.* (citing *Penn v. St. Tammany Parish Sheriff's Office,* 2002-0893, p. 7 (La. App. 1 Cir. 4/2/03); 843 So.2d 1157, 1161).

Defendants submit that, in the absence of any viable use of excessive force by Trooper Pichon under Section 1983, the Louisiana tort claims for assault and battery must also be dismissed.

#### 2. "Duty to intervene"

Terrell alleges that Trooper Roach had a duty to intervene to prevent tortious conduct by Pichon against Terrell.[63] Defendants submit that if the Section 1983 bystander liability claim

---

against Trooper Roach is dismissed, the related negligence claim against Trooper Roach should also be dismissed for the same reasons because Trooper Roach had no reasonable opportunity to intervene.

### 3. Respondeat superior claims

Terrell alleges that Naquin and Williams are liable under the doctrine of respondeat superior for any torts committed by Pichon and Roach under Louisiana law.

Civil Code Article 2320 provides that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."  The article further provides that "responsibility only attaches, when the masters or employers … might have prevented the act which caused the damage, and have not done it."

The "employer" of Troopers Pichon and Roach is the State of Louisiana and the Louisiana State Police.  Neither Naquin nor Williams are an "employer" such that liability may be vicariously imputed to them.

Defendants have been unable to find any Louisiana state case law in which an individual supervisor has ever been determined to be the "employer" or "master" as those terms are used in the code article.  In fact, the only case that Defendants have located on this topic is a Western District of Louisiana decision, *Morris v. Pierce*, 2008 WL 4287967 (W.D.La. 9/17/08), in which a civil rights plaintiff similarly situated to Lyle Dotson had filed 1983 and state law tort claims alleging excessive use of force.  The plaintiff alleged that Shreveport's Chief of Police should be held liable under La. C.C. Art. 2320 for state law tort claims alleged against the police

---

[63] R.Doc. 7, ¶ 89.

officers who had arrested him. The court noted that the plaintiff had "presented no evidence that Chief Campbell personally employed the defendant officers, whom were likely employed by the City of Shreveport." *Id.* at *7. The court further noted that the plaintiff had "not cited any authority for the suggestion that a mere supervisor (not an employer) may be vicariously and personally liable for a tort committed by a subordinate absent any independent fault by the supervisor." *Id.* The court did allow the plaintiff to proceed with his respondeat superior claims against the City of Shreveport as the employer of the officers. *Id.* at *8.

Terrell's respondeat superior claims must therefore be dismissed because neither Naquin nor Williams was his employer.

### 4. Negligent retention

Finally, Terrell alleges that Naquin and Williams are liable "under the Louisiana law of negligent retention" and for failing to remove Pichon from duty.

Louisiana cases alleging "negligent retention" as a theory of liability generally bring discuss these claims with respect to employers, not mere supervisors. *See, e.g., Cote v. City of Shreveport*, 46,571 (La. App. 2 Cir. 9/21/11), 73 So.3d 435; *Kelley v. Dyson,* 10-61 (La. App. 5 Cir. 5/25/2010), 10 So.3d 283. As set forth above, neither Naquin nor Williams was the employer of either Pichon or Roach, and these claims must likewise be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that all claims asserted in this lawsuit by Plaintiff, Zachary Terrell, be dismissed with prejudice and at Plaintiff's cost.

Respectfully Submitted,

**JEFF LANDRY**
**Attorney General**
**State of Louisiana**


By: ___/s Gregory C. Fahrenholt_____
**ANDRÉ C. GAUDIN (20191)**
**GREGORY C. FAHRENHOLT, T.A. (28572)**
**BURGLASS AND TANKERSLEY, L.L.C.**
5213 Airline Drive
Metairie, Louisiana 70001-5602
Direct Dial Phone: (504) 836-0408
Telefax: (504) 287-0448
Special Assistant Attorneys General

Attorneys for Defendants,
Troy Pichon, Jeffrey Roach, Derrell Williams, and
Darrin Naquin

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of June, 2019, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the court's electronic filing system to all counsel of record.


_/s Gregory C. Fahrenholt_____
**GREGORY C. FAHRENHOLT**