# COOPERATIVE ENDEAVOR
# AGREEMENT

dated as of Sept. 17, 2015

By and among
the City of New Orleans,
French Quarter Economic Development District,
State of Louisiana and Louisiana State Police

Relating to the enhancement of public safety for economic development purposes
of the historic French Quarter in the City of New Orleans

Terrell014367

# TABLE OF CONTENTS

Page

## ARTICLE I
### DEFINITIONS

SECTION 1.01.   Definitions..........................................................................2
SECTION 1.02.   Use of Defined Terms................................................4

## ARTICLE II
### REPRESENTATIONS OF THE CITY AND THE DISTRICT

SECTION 2.01.   City and District Authority .....................................4
SECTION 2.02.   Collections ...........................................................4
SECTION 2.03.   Public Hearing ......................................................4
SECTION 2.04.   No Suits.................................................................4
SECTION 2.05.   Term of this Agreement.........................................5

## ARTICLE III
### COOPERATIVE ENDEAVOR OBLIGATIONS

SECTION 3.01.   Relating to Article VII, Section 14 of the Louisiana Constitution......5
SECTION 3.02.   Transfer of Funds .................................................5
SECTION 3.03.   Calculations..........................................................5
SECTION 3.04.   Effective Date of Monthly Collections ................6
SECTION 3.05.   Collection Process.................................................6

## ARTICLE IV
### REPRESENTATIONS OF THE LSP

SECTION 4.01.   Representations......................................................6

## ARTICLE V
### LSP OBLIGATIONS

SECTION 5.01.   Implementation of the Project...............................8
SECTION 5.02.   Use of Proceeds....................................................8

## ARTICLE VI
### CITY OBLIGATIONS

SECTION 6.01.   Collection of Tax...................................................8

## ARTICLE VII
### DISTRICT OBLIGATIONS

SECTION 7.01.   Obligation to Levy Designated Sales Tax.............8
SECTION 7.02.   Designated Sales Tax Proceeds.............................8

## ARTICLE VIII
### VERIFICATION OF COSTS

SECTION 8.01.   Project Costs .........................................................9

Terrell014368

## ARTICLE IX
## MISCELLANEOUS

SECTION 9.01.   Liberal Construction ................................................................. 9
SECTION 9.02.   Notices ................................................................................... 9
SECTION 9.03.   Further Assuarances ................................................................ 10
SECTION 9.04.   Reserved ................................................................................ 10
SECTION 9.05.   Severability ........................................................................... 10
SECTION 9.06.   Indemnity .............................................................................. 10
SECTION 9.07.   No Personal Liability .............................................................. 11
SECTION 9.08.   Captions ................................................................................ 11
SECTION 9.09.   Counterparts .......................................................................... 11
SECTION 9.10.   Governing Law ....................................................................... 11
SECTION 9.11.   Reserved ................................................................................ 11
SECTION 9.12.   Amendment and/or Modification ............................................. 11
SECTION 9.13.   Rescission or Amendment ....................................................... 11
SECTION 9.14.   City Council Approval ............................................................ 11
SECTION 9.15.   Termination for Convenience .................................................. 12

## EXHIBITS

EXHIBIT A   Boundaries ........................................................................... A-1
EXHIBIT B   Project Description ............................................................... B-1
EXHIBIT C   Project Details ..................................................................... C-1

Terrell014369

## COOPERATIVE ENDEAVOR AGREEMENT

THIS COOPERATIVE ENDEAVOR AGREEMENT (the "**Agreement**"), which shall be dated for convenience of reference as of Sept. 17, 2015, is by and among:

CITY OF NEW ORLEANS, LOUISIANA (the "**City**"), a political subdivision of the State of Louisiana, represented and appearing herein through Mayor Mitchell J. Landrieu;

FRENCH QUARTER ECONOMIC DEVELOPMENT DISTRICT, STATE OF LOUISIANA (the "**District**"), a political subdivision of the State of Louisiana, represented and appearing herein through its duly authorized representative; and

DEPARTMENT OF PUBLIC SAFETY: PUBLIC SAFETY SERVICES: OFFICE OF STATE POLICE (the "**LSP**"), a subdivision of the State of Louisiana, represented and appearing herein through its duly authorized representative;

### WITNESSETH

WHEREAS, Part II, Chapter 27, Title 33 of the Louisiana Revised Statutes of 1950, as amended (La. R.S. 33:9038.31, et seq.) (the "**Act**") authorizes municipalities, parishes and certain other local governmental subdivisions to create economic development districts to carry out the purposes of the Act, which economic development districts are political subdivisions of the State of Louisiana and possess such power and authority and have such duties as provided by the Act and other law; and

WHEREAS, pursuant to the Act, the City, acting through its City Council as its governing authority, adopted Ordinance MCS No. 026374 on April 23, 2015, creating the District, in accordance with La. R.S. 33:9038.32, with boundaries as set forth on Exhibit A hereto, from which District shall levy sales taxes in accordance with La. R.S. 33:9038.39, the proceeds of which are expected to be used to fund the French Quarter Economic Development District Trust Fund (the "**Trust Fund**"); and

WHEREAS, the Act permits such economic development districts to levy up to two percent (2%) of sales taxes to finance economic development projects in the District in accordance with and as authorized by the Act and providing for other matters in connection with the foregoing; and

WHEREAS, the District intends to levy a .2495 percent (0.2495%) sales tax within the boundaries of the District that it desires to designate for the purposes described herein (the "**Designated Sales Tax**"), the proceeds of which (after paying the reasonable and necessary costs and expenses of collecting and administering the Designated Sales Tax), will be paid into the Trust Fund and there dedicated and used to pay the costs of economic development projects, as defined in the Act, particularly in La. R.S. 33:9038.34(M) and La. R.S. 33:9038.36; and

Terrell014370

WHEREAS, Article VI, Section 20 of the Louisiana Constitution of 1974 provides that a political subdivision may exercise and perform any authorized power and function, including financing, jointly or in cooperation with one or more political subdivisions, either within or without the state, or with the United States or its agencies; and

WHEREAS, Article VII, Section 14(C) of the Louisiana Constitution of 1974 provides that the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual; and

WHEREAS, Chapter 27 of Title 33 of the Louisiana Revised Statutes of 1950, as amended (La. R.S. 33:9020, et seq.) (the "**Cooperative Economic Development Law**"), provides that local governmental subdivisions (including municipalities) may cooperate or engage in cooperative endeavors providing for cooperative financing of economic development projects with other local governmental subdivisions or with any other private or public entity or person, for the purpose of aiding in cooperative development, all as defined in the Cooperative Economic Development Law;

NOW, THEREFORE, the City, the District and the LSP each agree to perform their respective obligations under this Agreement in accordance with the conditions, covenants and procedures set forth herein and in the exhibits attached hereto and made a part hereof as follows:

## ARTICLE I

## DEFINITIONS

SECTION 1.01. **Definitions.**   The following terms shall, for purposes of this Agreement, have the following meanings:

"**Act**" shall mean Part II, Chapter 27, Title 33 of the Louisiana Revised Statutes of 1950, as amended (La. R.S. 33:9038.31, et seq.).

"**Agreement**" shall mean this Cooperative Endeavor Agreement as it may be amended or modified from time to time or at any time in accordance with the terms hereof.

"**Calendar Year**" or "**Fiscal Year**" shall mean each yearly period that commences on January 1 through and including the following December 31.

"**City**" shall mean the City of New Orleans, Louisiana.

"**City Council**" shall mean the Council of the City of New Orleans, acting as the governing authority of the City of New Orleans, Louisiana.

"**LSP**" shall mean the Department of Public Safety, Public Safety Services, Office of State Police, a subdivision of the state of Louisiana.

Cooperative Endeavor Agreement

2

Terrell014371

"**Cooperative Economic Development Law**" shall mean Chapter 27 of Title 33 of the Louisiana Revised Statutes of 1950, as amended (La. R.S. 33:9020, et seq.).

"**District**" shall mean the French Quarter Economic Development District, State of Louisiana, the boundaries of which are shown on Exhibit A hereto, and any expanded geographical area as the governing authority of the City shall designate by ordinance following the Effective Date in accordance with the Act. This District shall not be considered a de facto taxing district for any reason.

"**Designated Sales Tax**" shall mean the .2495 percent (0.2495%) sales tax being levied by the District pursuant to a resolution adopted by the Governing Authority on April 23, 2015, and which will, beginning as set forth in Section 3.04 hereof, be collected on the sale at retail, the use, the lease or rental, the consumption and storage for use or consumption of tangible personal property and on sales of services in the District, all defined in the Uniform Local Sales Tax Code (La. R.S. 47:337.1, et seq.), as it may be amended from time to time, or any other appropriate provision or provisions of law, as amended.

"**Effective Date**" shall mean the last date of execution by any party hereto.

"**Governing Authority**" shall mean the Council of the City of New Orleans, acting as the governing authority of the District.

"**Local Services Law**" shall mean Chapter 2 of Title 33 of the Louisiana Revised Statutes of 1950, as amended (La. R.S. 33:1321-1337, inclusive).

"**Month**" shall mean a calendar month.

"**Monthly Collections**" shall mean the amount of Net Revenues of the Designated Sales Tax collected during each Month of the Term.

"**Net Revenues of the Designated Sales Tax**" shall mean the gross revenues of the Designated Sales Tax collected within the boundaries of the District, after the payment of the reasonable and necessary costs and expenses of collecting and administering the Designated Sales Tax and any audit or other necessary expenses of the District. The gross revenues collected shall be used only for the purpose of enhancing public safety within the District, as set forth in Exhibit B to this Agreement.

"**Project**" shall mean the enhancement of public safety for economic development purposes within the boundaries of the French Quarter Management District as more specifically described in Exhibit A hereto.

"**State**" shall mean the State of Louisiana.

"**Target Date**" shall mean January 1, 2016, the date on which the Project is expected to be placed in service, subject to extensions due to delays caused by force majeure as described in Section 5.01.

Terrell014372

"**Term**" shall mean the term of this Agreement commencing on the Effective Date and continuing until all obligations have been satisfied or discharged as described herein.

"**Trust Fund**" shall mean the French Quarter Economic Development District Trust Fund established pursuant to La. R.S. 33:9038.34(O), which constitutes a special trust fund for the furtherance of economic development projects and into which the Net Revenues of the Designated Sales Tax will be deposited and used only for any permitted purposes as described herein.

SECTION 1.02. <u>Use of Defined Terms</u>. Terms defined in this Agreement shall have their defined meanings when used herein and in any document, certificate, report or agreement furnished from time to time in connection with this Agreement unless the context otherwise requires.

ARTICLE II

REPRESENTATIONS OF THE CITY AND THE DISTRICT

SECTION 2.01. <u>City and District Authority</u>. The City and the District have all requisite power pursuant to the Act, Article VI, Section 20 and Article VII, Section 14(C) of the Louisiana Constitution of 1974, the Local Services Law and the Cooperative Economic Development Law to enter into this Agreement and perform their obligations hereunder, and there are no contracts or obligations in conflict herewith.

SECTION 2.02. <u>Collections</u>. The District and the City both hereby represent, in reliance upon advice of legal counsel and representations of the City's Director of Finance, that current law and the current internal collection process of the City are adequate for the purpose of collecting, classifying, reconciling, calculating and remitting the Net Revenues of the Designated Sales Tax.

SECTION 2.03. <u>Public Hearing</u>. The City Council has (i) conducted a public hearing, (ii) created and designated the District, and (iii) approved the execution of this Agreement. The Governing Authority has (i) conducted a public hearing, (ii) adopted a resolution levying the Designated Sales Tax, and (iii) approved the execution of this Agreement.

SECTION 2.04. <u>No Suits</u>. Except as may be otherwise disclosed in writing, to the best of the knowledge of the City and the District, there is no action, suit, investigation or proceeding pending, or threatened, against the City or the District, before any court, arbitrator, or administrative or governmental body, or insurance of operations of the City or the District which might adversely affect the ability of the City or the District to comply with the their respective obligations hereunder or in connection with the transactions contemplated hereby, relative to this Agreement and the obligations and undertakings of the City and the District described herein.

Terrell014373

SECTION 2.05. **Term of this Agreement**. The Term of this Agreement is as described in the definition of "Term" described hereinabove.

## ARTICLE III

## COOPERATIVE ENDEAVOR OBLIGATIONS

SECTION 3.01. **Relating to Article VII, Section 14 of the Louisiana Constitution**. In entering into this agreement it is not the intent of the City, the District or the LSP to enter into a gratuitous transfer of public funds because such parties expect that the Project will be an "Economic Development Project" within the meaning of La. R.S. 33:9038.34, and that they will each receive something of value in return for the performance of their obligations hereunder, which is:

(a)    in the case of the City, the promotion of economic development in the City by assisting the tourism, commercial and retail industries through enhancement of public safety within the District;

(b)    in the case of the District, the promotion of economic development in the City by assisting the tourism, commercial and retail industries through enhancement of public safety within the District; and

(c)    in the case of the LSP, implementation of the Project which will result in enhancement of the businesses and properties in the District.

Additionally, the City, the District and the LSP will have reciprocal obligations relating to the satisfaction of the additional requirements set forth herein with respect to the allocation, expenditure and use of the Net Revenues of the Designated Sales Tax.

The City and the District further find and determine that (a) both the City and the District have the legal authority to enter into this Agreement, (b) the Project will be an Economic Development Project within the meaning of the Act that creates a public benefit, specifically the promotion of the tourism, commercial, and retail industries through enhancement of public safety for visitors, residents and workers within the District, and (c) there is a reasonable expectation on the part of the City and the District of receiving at least equivalent value in exchange for the use of the Net Revenues of the Designated Sales Tax as set forth herein.

SECTION 3.02. **Transfer of Funds.** It shall be the continuing duty of the District and the City to cause to be deposited the Monthly Collections into the Trust Fund no later than the last business day of the month following the month such funds are available.

SECTION 3.03. **Calculations.** Monthly Collections received in any Month as a result of audits shall be treated as Monthly Collections for such Month for purposes of this Agreement.

If it is determined that for any period of time less monies have been transferred than were due, for whatever reason, the City and the District shall direct an adjustment in the Monthly

Terrell014374

Collections paid into the Trust Fund in order that the shortfall or over-collection of revenues due to the District for any prior period is eliminated as soon as practicable and in any event no more than ninety days subsequent to the recalculation giving rise to the need for the adjustment, provided that the City and the District shall not be obligated to use any funds for adjustments other than from Net Revenues of the Designated Sales Tax.

**SECTION 3.04. <u>Effective Date of Monthly Collections.</u>** The Designated Sales Tax shall be collected beginning in the first month following the passage of such tax, or as soon thereafter as such tax may be properly collected by the City's Department of Finance. The Monthly Collections shall be deposited by the City and the District into the Trust Fund beginning on the last day of the month following the month in which the City's Department of Finance begins collecting the Designated Sales Tax.  It shall be the responsibility of the City and the District to cause such funds to be deposited into the Trust Fund.

**SECTION 3.05. <u>Collection Process.</u>** The Designated Sales Tax shall be collected, accounted for and remitted by the City's Department of Finance (or its successor) in the same manner as all other City sales taxes are collected.

**ARTICLE IV**

**REPRESENTATIONS OF THE LSP**

**SECTION 4.01. <u>Representations.</u>** As a material inducement to the City to enter into this Agreement, without which it would not have entered into this Agreement, the LSP makes the following representations:

(a)     The LSP is a duly and lawfully organized political subdivision of the State of Louisiana, with all powers, authorization, qualifications, consents and approvals required to carry on its business in the State as now conducted, and will acquire and possess all such required authority to carry on the business contemplated in this Agreement, including the operation of the Project.

(b)     The LSP has all the requisite power and authority to enter into this Agreement and to carry out the terms hereof, and the person signing this Agreement has the authority to execute this Agreement as the authorized representative of the LSP, and to bind the LSP to all of the terms of this Agreement.

(c)     This Agreement has been duly authorized, executed and delivered by the LSP and constitutes a legal, valid and binding obligation of the LSP, enforceable in accordance with its terms.

(d)     The LSP has taken or will take all necessary and proper action to authorize the execution, issuance and delivery of this Agreement and any other documents required by this Agreement, and the performance of its obligations under this Agreement.

Terrell014375

(e)      The execution of this Agreement and any other documents required by this Agreement, and the performance by the LSP of its obligations hereunder are within the powers of the LSP and will not violate any provisions of any law, regulation, decree or governmental authorization applicable to the LSP or any agreements of the LSP with any of its creditors.

(f)      At the time of execution of this Agreement, the LSP is in full compliance with all of the terms and conditions of this Agreement, and no default hereunder has occurred or is continuing, and no event, act or omission has occurred or is continuing which with the lapse of time or the giving of notice would constitute such a default.

(g)      Except as may be otherwise disclosed in writing, there is no action, suit, investigation or proceeding pending, or to its best knowledge threatened, against the LSP before any court, arbitrator, or administrative or governmental body which could reasonably be expected to result in a material adverse change in the LSP's financial condition or operations, or in the LSP's ability to comply with its obligations hereunder or to participate in the transactions contemplated hereby.

(h)      This Agreement contains no untrue or misleading statement of any material fact. There is no material fact or circumstance known to the LSP which adversely affects or, so far as the LSP can now reasonably foresee, will adversely affect the condition of the LSP or the LSP's ability to perform its obligations hereunder, which the LSP has not disclosed in writing to the City. All representations made herein by the LSP are true and accurate and remain in full force and effect.

(i)      Convicted felon provision (Code Sec. 2-8[c]): The LSP swears in compliance with Section 2-8 (c) of the Code of the City of New Orleans that no LSP principal, member, or officer has, within the preceding five years, been convicted of, or pled guilty to, a felony under state or federal statutes for embezzlement, theft of public funds, bribery, or falsification or destruction of public records.

(j)      Non-Solicitation provision (Code Sec. 46-51): The LSP swears that it has not employed or retained any LSP or person, other than a bona fide employee working solely for him, to solicit or secure the subject contract. The LSP further certifies that it has not paid or agreed to pay any person, other than a bona fide employee working for him, any fee, commission, percentage, gift, or any other consideration contingent upon or resulting from the subject contract.

(k)      Inspector General Cooperation Provision: It is agreed that the LSP will abide by all provisions of City Code §2-1120, including but not limited to City Code §2-1120(12), which requires the LSP to provide the Office of Inspector General with documents and information as requested. Failure to comply with such requests shall constitute a material breach of the contract. In signing this contract, the contractor agrees that it is subject to the jurisdiction of the Orleans Parish Civil District Court for purposes of challenging a subpoena.

Terrell014376

ARTICLE V

LSP OBLIGATIONS

SECTION 5.01. **Implementation of the Project.** The LSP will implement the Project.

SECTION 5.02. **Use of Net Revenues of the Designated Sales Tax.**  The LSP agrees that the proceeds of the Designated Sales Tax received from the District as set forth herein will only be used for the purposes of such Designated Sales Tax as set forth in the resolution authorizing the issuance of such.  It is anticipated that the proceeds provided to the LSP pursuant to this Section 7.03 will total approximately $2,000,000 annually.  The LSP agrees that the Net Revenues of the Designated Sales Tax received from the District as set forth herein will be used only to pay "costs of an economic development project" pursuant to the Act.

ARTICLE VI

CITY OBLIGATIONS

SECTION 6.01. **Collection of Tax.** During the Term of this Agreement, the City, through its Department of Finance, pledges to collect the Designated Sales Tax in accordance with its usual and customary procedures and to deposit the Net Revenues of the Designated Sales Tax in the Trust Fund.

ARTICLE VII

DISTRICT OBLIGATIONS

SECTION 7.01. **Obligation to Levy Designated Sales Tax.**  The District shall be obligated and bound under the terms and provisions of law to levy and impose the Designated Sales Tax and to provide for all reasonable and necessary rules, regulations, procedures and penalties in connection therewith, including the proper application of the proceeds of the Designated Sales Tax.  The District waives its legal right to issue bonds in connection with the District.  The District hereby obligates itself to allocate the Designated Sales Tax and to deposit the Net Revenues of the Designated Sales Tax in the Trust Fund for use as set forth in this Article.

SECTION 7.02. **Designated Sales Tax Proceeds.**  The District agrees that, upon the issuance of the Designated Sales Tax, it will provide the proceeds to the LSP to be used in the manner set forth in the resolution authorizing the issuance of the funds.

Terrell014377

## ARTICLE VIII

### VERIFICATION OF COSTS

**SECTION 8.01. Project Costs.** Upon completion of calendar year, actual costs of the Project shall be documented to the City by the LSP in such form and in sufficient detail to allow the City or its duly appointed representatives, to make an independent determination as to the actual costs incurred or paid by the LSP with respect to the Project. Any such documentation shall be accompanied by a sworn statement of an authorized representative of the LSP that the actual costs of the Project described in such documentation are true and accurate and are all with respect to the Project.

### ARTICLE IX

### MISCELLANEOUS

**SECTION 9.01. Liberal Construction.** This Agreement shall be construed liberally to secure the beneficial intents and purposes hereof, and in particular shall be construed liberally as necessary to protect and further the interests of the parties hereto.

**SECTION 9.02. Notices.** All reports, statements or notices required or advisable to be given hereunder shall be deemed to be given if sent to the parties hereto at the addresses as follows:

City and District:
City Attorney, City of New Orleans
1300 Perdido St., Rm. 5E03
New Orleans, Louisiana 70112

and

Advisor to the Mayor
1300 Perdido St., Rm. 2E04
New Orleans, Louisiana 70112

LSP
Office of the Superintendent
7919 Independence Blvd.
Baton Rouge, LA 70806
Attention: Col. Mike Edmonson

Any notice required or permitted to be given under or in connection with this Agreement shall be in writing and shall be either hand-delivered or mailed, postage prepaid by first-class mail, registered or certified, return receipt requested, or by private, commercial carrier, express mail, such as Federal Express, or sent by fax or other similar form of rapid transmission

Terrell014378

confirmed by written confirmation mailed (postage prepaid by first-class mail, registered or certified, return receipt requested or private, commercial carrier, express mail, such as Federal Express) at substantially the same time as such rapid transmission, or personally delivered to an officer of the receiving party. All such communications shall be mailed, sent or delivered to the address or numbers set forth above, or as to each party at such other addresses or numbers as shall be designated by such party in a written notice to the other party.

SECTION 9.03. **Further Assurances.** From time to time hereafter, the City shall execute and deliver such additional instruments, certificates or documents, and take all such actions as the each party hereto may reasonable request for the purpose of fulfilling their obligations hereunder. Without limiting the foregoing, within fifteen (15) days following the request from any party hereto, each other party shall deliver to the requesting party, an estoppel certificate stating, to the best of such parties knowledge or belief: (i) whether or not this Agreement is in full force and effect and the extent to which this Agreement has been supplemented, modified or amended; (ii) whether or not there are any defaults or breaches under this Agreement or conditions that, with the passage of time, the giving of notice, or both, would constitute a default or breach under this Agreement (and, if applicable, the nature of such defaults, breaches or conditions); and (iii) whether the conditions and agreements under this Agreement have been satisfied or performed as of the date of such estoppel certificate (and, if applicable, the nature of any failures). Any such statement or certificate may be conclusively relied upon by the party requesting the estoppel certificate.

SECTION 9.04. **Reserved.**

SECTION 9.05. **Severability.** To the fullest extent possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provisions of this Agreement shall be prohibited or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Agreement.

SECTION 9.06. **Indemnity.**

I. **INDEMNITY.**

A. <u>Duty to Indemnify the City.</u> To the fullest extent permitted by law, the LSP will protect, defend, indemnify, and hold harmless the City, its agents, elected officials, and employees (collectively, the "Indemnified Parties") from and against all claims, demands, actions, liabilities, losses (including, without limitation, economic losses), and costs, arising out of or related to (a) any actual or alleged act or omission in the performance of this Agreement by the LSP, its employees, or any subcontractor or (b) any act outside the scope of this Agreement by the LSP, its employees, or any subcontractor.

B. <u>Limit on Duty to Indemnify.</u> Notwithstanding anything in this Agreement to the contrary, the LSP is not required to indemnify the Indemnified Parties for any loss that results from the gross negligence or willful misconduct of any of the Indemnified Parties, provided that the LSP or any subcontractor did not contribute to such gross negligence or willful misconduct.

Cooperative Endeavor Agreement

Terrell014379

C. <u>Independent Duty to Defend.</u> Notwithstanding anything in this Agreement to the contrary, the LSP, at its option, will immediately defend the City from, or reimburse the City for the City's costs incurred in the defense of, any claim that actually or potentially falls within the scope of this indemnity, even if the claim is groundless, false, or fraudulent.

D. <u>Expenses.</u> The LSP will bear all expenses, including without limitation reasonable attorney fees, of the City in enforcing the terms of this article.

**SECTION 9.07. <u>No Personal Liability.</u>** No covenant or agreement contained in this Agreement shall be deemed to be the covenant or agreement of any official, trustee, officer, agent or employee of the City or the District, in his or her individual capacity, and neither the officers thereof nor any official executing this Agreement shall be liable personally with respect hereto or be subject to any personal liability or accountability by reason of the execution and delivery of this Agreement. No member, officer, director, trustee, employee, agent, contractor or consultant of the LSP (disclosed or undisclosed) shall have any personal liability to the City or the City Finance Department or any of their respective successors in interest with respect to the subject matter of this Agreement.

**SECTION 9.08. <u>Captions.</u>** The captions or headings in this Agreement are for convenience only and in no way define, limit or describe the scope or extent of any of the provisions of this Agreement.

**SECTION 9.09. <u>Counterparts.</u>** This Agreement may be executed in several counterparts, each which shall be an original and all of which when taken together shall be deemed one and the same Agreement.

**SECTION 9.10. <u>Governing Law.</u>** This Agreement shall be constructed in accordance with and governed by the laws of the State of Louisiana.

**SECTION 9.11. <u>Reserved</u>.**

**SECTION 9.12. <u>Amendment and/or Modification.</u>** Neither this Agreement nor any term, provision or exhibit hereof may be changed, waived, discharged, amended or modified orally, or in any manner other than by an instrument in writing signed by all of the parties hereto.

**SECTION 9.13. <u>Rescission or Amendment.</u>** In no event shall any rescission or amendment to this Agreement be effective without the prior written consent of the affected parties hereto, as well as a certificate of the City setting forth a determination by the City that, taking into account all relevant facts and circumstances.

**SECTION 9.14. <u>City Council Approval.</u>** It is understood that the obligations of the City are subject to and contingent upon City Council approval and funding.

**SECTION 9.15 <u>Termination for Convenience.</u>** Either party may terminate the "agreement" for convenience by giving thirty (30) days written notice to the other party. Upon

Terrell014380

the expiration of thirty (30) days after notice was issued, this agreement shall be terminated.  The District and City shall make the final transfer of funds to LSP no later than thirty days after the termination becomes effective for the final thirty days of service by LSP together with any amount still due and owing for any transfer of fund required by this agreement.

Terrell014381

**THIS COOPERATIVE ENDEAVOR AGREEMENT** is hereby executed in multiple counterparts as of the date aforesaid in the presence of the undersigned competent witnesses, who hereunto sign their names with the City and the LSP.

CITY OF NEW ORLEANS, LOUISANA

By: _____
Name: MITCHELL J. LANDRIEU
Title:  MAYOR OF THE CITY OF
       NEWORLEANS

LOUISIANA STATE POLICE

By: _____
Name: MICHAEL EDMONSON
Title: SUPERINTENDENT OF THE LOUISIANA
      STATE POLICE

FRENCH QUARTER ECONOMIC
DEVELOPMENT DISTRICT, STATE OF
LOUISIANA

By: _____
Name: _____
Title: _____

Cooperative Endeavor Agreement

13

Terrell014382

THIS COOPERATIVE ENDEAVOR AGREEMENT is hereby executed in multiple counterparts as of the date aforesaid in the presence of the undersigned competent witnesses, who hereunto sign their names with the City and the LSP.

CITY OF NEW ORLEANS, LOUISANA

By: _____
Name: MITCHELL J. LANDRIEU
Title:  MAYOR OF THE CITY OF
        NEWORLEANS

LOUISIANA STATE POLICE

By: _____
Name: MICHAEL EDMONSON
Title: SUPERINTENDENT OF THE LOUISIANA
       STATE POLICE

FRENCH QUARTER ECONOMIC
DEVELOPMENT DISTRICT, STATE OF
LOUISIANA

By: _____
Name: _____
Title: _____

Cooperative Endeavor Agreement

13

Terrell014383

EXHIBIT A

## To Cooperative Endeavor Agreement

## BOUNDARIES OF
## FRENCH QUARTER ECONOMIC DEVELOPMENT DISTRICT
## OF THE CITY OF NEW ORLEANS, LOUISIANA

The boundaries of the District shall be as follows: the area bounded by the Mississippi River, the center line of Canal Street, the rear property line of the properties fronting on the lake side of North Rampart Street, and the rear property line of the properties fronting on the downriver side of Esplanade Avenue to the Mississippi River.

Terrell014384

**EXHIBIT B**
to Cooperative Endeavor Agreement

**PROJECT DESCRIPTION**

Assistance to and promotion of tourism, commercial and retail industries in the City by supplementing and enhancing public safety for residents, visitors and workers within the French Quarter Economic Development District based on assignment of no less than fifteen additional full-time LSP officers for a period of five years, beginning January 1, 2016, as needed.

Terrell014385

EXHIBIT C
to Cooperative Endeavor Agreement

PROJECT DETAILS

I.   ADDITIONAL OBLIGATIONS, GOAL AND OBJECTIVES OF THE PARTIES

A.   **Goal and Objectives of the Parties.** The Goal and Objectives of this Agreement are as follows:

1.   The goal of this Agreement is to provide an LSP presence in the District in conjunction with the New Orleans Police Department's 8th District, in order to have an additional police presence in the District which is supplemental to, and is not a replacement for, the number of on-duty police officers routinely assigned to work within the District.

2.   The Parties' objectives are to provide a heightened police presence throughout the District, a deterrence to the commission of criminal activity in the District and enhanced security for the residents, businesses, service workers and visitors within the District.

3.   An additional objective of the Parties is to provide a heightened police presence within the District while the City and others explore options to address NOPD's officer shortage.

B.   **Obligations of the State, through the Superintendent of LSP.** In return for the District fulfilling the obligations set forth above, including the District providing funds to the State, LSP hereby agrees to the following:

1.   Provide as many full-time LSP officers as possible based on revenue collected by the District, but no less than fifteen officers at given time, for proactive patrols under this agreement, as assigned by their supervisor or commander, for a period of five years beginning on January 1, 2016.

2.   Deliver a complete Patrol Plan for the District to City prior to the beginning of the patrol day on which the Patrol Plan will be implemented. The Patrol Plan shall be made in conjunction with the New Orleans Police Department 8th District, based on the needs of the Eighth District as determined by the Eighth District Commander or his designee, and shall include the number of officer hours that are to be worked each week, a schedule for the length, time and day of each patrol shift, and specify patrol routes and assignments.

3.   If LSP decides to revise the Patrol Plan, deliver a revised Patrol Plan prior to the beginning of the patrol day in which the revised Patrol Plan will be implemented.

Terrell014386

4. The officers deployed in the District pursuant to this Agreement shall be on-duty, uniformed LSP officers in marked LSP vehicles or on foot to patrol in the District.

5. Require all Shift Supervisors to train Officers working a Patrol Shift in the Area for the first time on the New Orleans City Code ordinances pertinent to patrolling in the District as well as on handling public safety situations that are specific to a tourist-dense French Quarter.

6. Assign officers only to duties in the District. The District shall encompass the boundaries set forth in Exhibit A to this Agreement.

7. Authorize officers to leave their assigned patrol area to respond to an emerging situation in the District, such as a crime in progress or a pursuit of a person by an NOPD or LSP officer.

8. Coordinate shift assignments and patrol areas daily with the Commander of the NOPD 8th District, or his designee, and the NOPD 8th District Shift Supervisor.

9. Ensure that Detail Officers are trained to handle public safety situations that are specific to a tourist-dense French Quarter and educated on the City Code ordinances that are pertinent to patrolling in the District.

10. Have an LSP representative attend weekly 8th District COMSTAT meetings and monthly 8th District NONPAC meetings to receive feedback from the Commander of the 8th District, 8th District Shift Supervisors, and the community on the performance of the LSP Officers and their suggestions for revising the Patrol Plan.

11. Prohibit officers from providing escort services.

12. If at any time the governor of the State of Louisiana or the Superintendent of the Louisiana State Police deems it necessary to divert all LSP resources because of natural or man-made disaster, named storm, or declared state of emergency, all provisions of this agreement will be suspended until such time that LSP resumes normal duty schedule.

C. **Obligations of the City and District, through the Commander of the NOPD 8th District.** In return for LSP fulfilling the obligations set forth above, including the District providing funds to the LSP, the City, through the Commander of the NOPD 8th District, hereby agrees to the following:

1. Assign on-duty, uniformed NOPD Officers in marked vehicles to continue to patrol in the District, above and beyond any LSP officers serving as contemplated herein, at all times during this Agreement.

Cooperative Endeavor Agreement

17

Terrell014387

2.  Require on-duty NOPD officers, and not LSP Officers, to respond to non-priority calls for service, with the exception that if the incident occurs and/or is occurring in an LSP officer's assigned patrol area, the 8th District Shift Supervisor may request the LSP Officer to provisionally respond to the call.

3.  Use the LSP Officers to supplement, not replace, the number of on-duty NOPD 8th District officers or resources that were routinely deployed or used within the District during the period immediately preceding the execution of this Agreement.  Make a good faith effort to increase the number of on-duty officers deployed in the District and French Quarter during term of this agreement.

Terrell014388